**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAYMOND HARRY MILEY | |
| Appellant | No. 2997 EDA 2015 |

Appeal from the PCRA Order September 3, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0007472-2009

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED OCTOBER 03, 2016**

Appellant, Raymond Harry Miley, appeals from the order entered in the Bucks County Court of Common Pleas, which dismissed his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The relevant facts and procedural history of this case are as follows. Appellant engaged in sexual activity with his adopted daughter over a period of several years, beginning in 2001 when she was under thirteen years old. In 2009, the Commonwealth charged Appellant with multiple counts of rape of a child, involuntary deviate sexual intercourse ("IDSI"), and related offenses. The Commonwealth's evidence included a consensual wiretap of a telephone conversation between Appellant and the victim, in which Appellant

_____

*Retired Senior Judge assigned to the Superior Court.

admitted having sex with the victim. On December 24, 2009, Appellant filed a motion to suppress the audio recording of the conversation. Following a hearing, the trial court denied the suppression motion on the morning of March 10, 2010. After a lunch recess, Appellant returned to court that same date and entered an open guilty plea to rape of a person less than 13 years old, rape of a child,[1] IDSI with a person less than 16 years of age, unlawful contact with minor, incest, aggravated indecent assault of a person less than 16 years of age, endangering welfare of children, and corruption of minors. The court held an initial sentencing hearing on June 25, 2010. The victim gave an oral victim impact statement, and plea counsel cross-examined her on that statement. After the victim's testimony concluded, Appellant requested a continuance to file a motion to withdraw his guilty plea. The court granted the continuance. On July 9, 2010, Appellant filed a motion to withdraw his guilty plea, which the court denied. The court sentenced Appellant on October 15, 2010, to an aggregate term of fifteen (15) to thirty (30) years' incarceration. Appellant filed a motion for reconsideration of sentence, which the court granted. On December 13, 2010, the court reduced Appellant's aggregate sentence to twelve and one-half (12½) to twenty-five (25) years' incarceration. The court subsequently modified

_____

[1] In 2002, the offense of "rape of a person less than 13 years of age" was renamed "rape of a child" and moved to a different subsection of the rape statute.

- 2 -

Appellant's sentence to reflect corrected mandatory minimum terms for rape of a child and IDSI, pursuant to 42 Pa.C.S.A. § 9718.[2] Appellant's aggregate sentence remained twelve and one-half (12½) to twenty-five (25) years' incarceration. Appellant filed a *pro se* notice of appeal, which he subsequently withdrew.

On July 15, 2011, Appellant filed a *pro se* PCRA petition. The court appointed counsel, who filed multiple amended petitions. Appellant and the Commonwealth ultimately stipulated to reinstatement of Appellant's direct appeal rights *nunc pro tunc*. Appellant filed a notice of appeal *nunc pro tunc*, and this Court affirmed Appellant's judgment of sentence on June 10, 2014. *See Commonwealth v. Miley*, No. 219 EDA 2013, unpublished memorandum (Pa.Super. filed June 10, 2014). Appellant timely filed the current counseled PCRA petition on August 8, 2014. Following a hearing, the PCRA court denied the petition on September 3, 2015. On September 28, 2015, Appellant filed a timely notice of appeal. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises the following issues for our review:

---

[2] Appellant does not challenge his mandatory minimum sentences. Moreover, we observe our Supreme Court's recent decision in *Commonwealth v. Washington*, ____ Pa. ___, 142 A.3d 810 (2016), which held that *Alleyne v. U.S.*, ____ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) does not apply retroactively for purposes of collateral attacks on mandatory minimum sentences as illegal sentences.

WHETHER THE HONORABLE TRIAL COURT ERRED BY FINDING APPELLANT'S GUILTY PLEA WAS KNOWING, VOLUNTARY, AND INTELLIGENT BECAUSE [PLEA] COUNSEL WAS INEFFECTIVE IN THAT HE FAILED TO FULLY INFORM APPELLANT OF CRUCIAL EVIDENCE, TO WIT, A REPORT FROM AN EXPERT INDICATING THE WIRETAP TAPE MAY NOT HAVE BEEN ACCURATE?

WHETHER THE HONORABLE TRIAL COURT ERRED BY FINDING APPELLANT'S GUILTY PLEA WAS KNOWING, VOLUNTARY AND INTELLIGENT BECAUSE [PLEA] COUNSEL WAS INEFFECTIVE IN THAT HE IMPROPERLY PROMISED THAT APPELLANT WOULD ONLY RECEIVE A FIVE YEAR SENTENCE AS OFFERED BY [PLEA] COUNSEL BY THE HONORABLE TRIAL COURT AND APPELLANT RELIED UPON THAT REPRESENTATION?

WHETHER [PLEA] COUNSEL WAS INEFFECTIVE BECAUSE HE DID NOT CORRECTLY INFORM APPELLANT OF THE ELEMENTS OF THE CRIMES TO WHICH HE [PLED] GUILTY THEREBY RENDERING THE GUILTY PLEA UNKNOWING, INVOLUNTARY, AND UNINTELLIGENT?

WHETHER THE HONORABLE TRIAL COURT ERRED BY FINDING [PLEA] COUNSEL EFFECTIVE DESPITE THE FACT THAT HE FAILED TO FILE A MOTION TO WITHDRAW APPELLANT'S GUILTY PLEA AT AN EARLIER DATE AND/OR FAILED TO PROVIDE SUFFICIENT BASES FOR THE WITHDRAWAL?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101, 108 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those

findings. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We owe no deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa.Super. 2012). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. ***Commonwealth v. Knighten***, 742 A.2d 679, 682 (Pa.Super. 1999), *appeal denied*, 563 Pa. 659, 759 A.2d 383 (2000).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, a petitioner is required to make the following showing: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim."

*Commonwealth v. Taylor*, 933 A.2d 1035, 1042 (Pa.Super. 2007), *appeal denied*, 597 Pa. 715, 951 A.2d 1163 (2008) (quoting *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004)).

> Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*]*,* we held that a "criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

In issue one, Appellant argues plea counsel litigated the suppression motion before he received important evidence, *i.e.*, an expert report ("OWL report") regarding the authenticity of the copied recording of a telephone conversation between Appellant and the victim. Appellant asserts counsel should have requested a continuance to gain a better understanding of the OWL report's findings. Appellant contends his guilty plea was unknowing and involuntary because he relied on counsel's false representations that the

OWL report concluded the recording had no authenticity issues. Appellant claims counsel did not read the report before Appellant entered his plea but simply relied on a colleague's recitation of parts of the report over the phone. Appellant maintains the findings of the OWL report went to the admissibility of the recording. Appellant concludes counsel was ineffective for inducing him to plead guilty based on misinformation concerning the OWL report. We disagree.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a).

> [T]he ultimate determination of authenticity is for the jury. A proponent of a document need only present a *prima facie* case of **some** evidence of genuineness in order to put the issue of authenticity before the factfinders.
>
> The court makes the preliminary determination of whether or not a *prima facie* case exists to warrant its submission to the finders of fact, but the jury itself considers the evidence and weighs it against that offered by the opposing party.

***Commonwealth v. Brooks***, 508 A.2d 316, 320 (Pa.Super. 1986) (internal citations omitted) (emphasis in original).

Instantly, on September 30, 2009, law enforcement conducted a wiretap of a telephone conversation between Appellant and the victim, with the victim's consent. During pretrial discovery, plea counsel obtained a CD copy of the audio recording of the conversation. Appellant listened to it and denied having made the incriminating statements on the recording.

Appellant told counsel he believed different parts of the recording had been spliced together to make it sound like Appellant was admitting guilt. Counsel then hired an expert from OWL Investigations, Inc. to analyze the recording and determine if it had been manipulated in that manner, *i.e.*, if Appellant's words had been shifted around. The expert's report arrived at plea counsel's office on the day of the suppression hearing. Meanwhile, counsel litigated the suppression motion on issues related to the Commonwealth's preservation of the audio recording and compliance with the wiretap statute.

At the suppression hearing, the Commonwealth presented the testimony of Officer Gorman, who was involved in the wiretap investigation. Officer Gorman testified that he was present during the recorded phone call between Appellant and the victim. The victim nodded to Officer Gorman to indicate that Appellant was the person on the other end of the line. Officer Gorman testified that the recording was downloaded from a chip in the recorder to a county-owned computer. Officer Gorman then made a CD copy of the recording and downloaded another copy into an archive system. Following the close of the Commonwealth's evidence, the court denied Appellant's motion to suppress, without prejudice to Appellant's right to raise issues related to the OWL report. During the ensuing lunch recess, plea counsel received a message from his law office that the OWL report had arrived. Over the phone, one of the attorneys at the office read portions of

the report to plea counsel regarding the expert's methods and conclusions. The report referenced "anomalies" in the audio recording but did not conclude any "splicing" had occurred. Counsel also spoke to the expert during the recess. At the PCRA hearing, counsel testified as follows:

> I believe [the report] talked about anomalies. That's the main word that [the expert] Mr. Owen used. And I spoke to him after that, and he could not tell me that—**he could not testify in court that there were things taken out of context**. He could only talk about hearing things in the background and digital—some type of—not a time stamp but something that indicates that it did not sound continual to him.

(N.T. PCRA Hearing, 4/1/15, at 30-31) (emphasis added). Counsel concluded the report would affect only the weight of the evidence, not its admissibility, which was a reasonable conclusion in light of the expert's findings, and the authentication evidence the Commonwealth presented at the suppression hearing. *See Brooks, supra*. Counsel testified that he had shared the information he received about the report with Appellant during the court recess. Based on that discussion and previous conversations with counsel on the possibility of pleading guilty, Appellant decided to enter a guilty plea. Additionally, Appellant testified that he received a copy of the OWL report from counsel approximately five weeks after the plea had been entered. Therefore, Appellant had ample time to review the report before the sentencing hearing on June 25, 2010. Nevertheless, counsel testified that Appellant made no request to withdraw his plea at any time before sentencing. The PCRA court credited counsel's testimony on this issue. *See*

*Knighten, supra*.  Based on the foregoing, Appellant failed to establish arguable merit to his claim that counsel misrepresented the OWL report.  Appellant also failed to establish prejudice, *i.e.*, that he would not have pled guilty if counsel had provided an accurate picture of the report's content.  Thus, Appellant's first challenge to counsel's effectiveness merits no relief.[3] *See Kimball, supra*.

In issue two, Appellant argues plea counsel repeatedly told Appellant he would receive a maximum five-year sentence if he pled guilty.  Appellant further contends counsel improperly involved the trial court in the plea negotiations.  Appellant claims he was induced to plead guilty by counsel's false assurances of a five-year sentence.  Appellant concludes counsel's representations regarding sentencing constituted ineffective assistance.  We disagree.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa.Super. 2007) (quoting *Commonwealth v.*

---

[3] Appellant also suggests counsel was ineffective for failing to raise other issues at Appellant's suppression hearing.  Appellant, however, failed to develop his argument on those issues, including the merit of the underlying claims.  Therefore, those issues are waived.  *See Commonwealth v. D'Amato*, 579 Pa. 490, 500, 856 A.2d 806, 812 (2004) (stating that to succeed on allegation of counsel's ineffectiveness, PCRA petitioner must, at minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard).

*Hickman*, 799 A.2d 136, 141 (Pa.Super. 2002)). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.*

> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, …under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

*Commonwealth v. Morrison*, 878 A.2d 102, 105 (Pa.Super. 2005) (*en banc*), *appeal denied*, 585 Pa. 688, 887 A.2d 1241 (2005) (internal citations omitted).

Further, a trial judge may not participate in the plea bargaining process. *Commonwealth v. Evans*, 434 Pa. 52, 252 A.2d 689 (1969); *Commonwealth v. Johnson*, 875 A.2d 328 (Pa.Super. 2005), *appeal denied*, 586 Pa. 748, 892 A.2d 822 (2005).

> "Participation"…denotes some active role in discussion or negotiations relative to a plea. It is to be avoided as undesirable and potentially unfair to a defendant…. The mere presence of a trial judge at a conversation between counsel at which the possibility of a plea bargain is mentioned does not amount to participation by the trial judge in the plea bargaining.

*Commonwealth v. Sanutti*, 454 Pa. 344, 348, 312 A.2d 42, 44 (1973).

Instantly, the PCRA court reasoned as follows:

- 11 -

We begin by noting that the testimony elicited at Appellant's PCRA Hearing contradicts the notion that this [c]ourt engaged in any sentencing negotiations. [Plea counsel] testified that during a conference prior to the Suppression Hearing, both himself and the assistant district attorney discussed potential sentences if Appellant entered a guilty plea. [Plea counsel] explicitly testified that this [c]ourt was not involved in the negotiations, but rather simply confirmed that a mandatory minimum was being invoked in the case. So the premise supporting Appellant's claim is erroneous.

Next, the testimony from Appellant's PCRA Hearing further establishes that no promises of any sentence were made to Appellant. [Plea counsel] confirmed that he did not promise Appellant that he would receive a five (5) year sentence if he pled guilty, but rather estimated that the sentence would be between the five (5) year mandatory minimum sentence and the ten (10) year sentence that the assistant district attorney represented that she would seek. Moreover, despite Appellant['s] and [his father's] testimony that [plea counsel] continually communicated that Appellant should expect to receive a five (5) year sentence, letters that they each wrote at the time reflect that neither individual was expecting any particular sentence.

\* \* \*

Finally, Appellant confirmed when entering his guilty plea that he was not promised any particular sentence. The exchange between this [c]ourt and Appellant went as follows:

> The [c]ourt: Has anybody promised you about what my sentence would be?
>
> Appellant: No, your honor.

N.T. [Guilty Plea,] 3/10/10, [at] 15. When given the opportunity to divulge any promises that were made by [plea] counsel or any other person, Appellant confirmed that no promises were made regarding any potential sentence that could be imposed. Considering the fact that

- 12 -

> the testimony and evidence produced at Appellant's PCRA Hearing, coupled with Appellant's admissions under oath at his Guilty Plea Hearing, contradict any suggestion that Appellant was promised a particular sentence, there is no value to the claim that Appellant's guilty plea was not knowing, intelligent, or voluntary due to that reason. Therefore, Appellant's [plea] counsel cannot be ineffective when the underlying claim lacks merit.

(PCRA Court Opinion, filed January 7, 2016, at 11-12). The record supports the PCRA court's findings that: (1) the trial court did not improperly participate in plea negotiations; and (2) counsel did not induce Appellant to plead guilty with false assurances of a maximum five-year sentence. Therefore, the claims underlying Appellant's second ineffectiveness challenge lack arguable merit. **See Pierce, supra**.

In issue three, Appellant argues the court misinformed him regarding the elements of IDSI during the guilty plea colloquy. Appellant asserts the court referred to "sexual intercourse" but the offense requires an act of "**deviate** sexual intercourse." Appellant contends this mistake rendered his plea involuntary and counsel was ineffective for failing to correct the error. We disagree.

The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. **Commonwealth v. Hodges**, 789 A.2d 764 (Pa.Super. 2002). Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is

pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) the judge is not bound by the terms of the agreement unless he accepts the agreement. Pa.R.Crim.P. 590 *Comment*; **Commonwealth v. Watson**, 835 A.2d 786 (Pa.Super. 2003). "The guilty plea colloquy must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences." **Commonwealth v. Bedell**, 954 A.2d 1209, 1212 (Pa.Super. 2008), *appeal denied*, 600 Pa. 742, 964 A.2d 893 (2009). Defense counsel or the attorney for the Commonwealth may conduct part or all of the examination of the defendant, as permitted by the court. Pa.R.Crim.P. 590 *Comment*. A guilty plea will be deemed valid if an examination of the totality of the circumstances surrounding the plea shows that the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. **Commonwealth v. Rush**, 909 A.2d 805 (Pa.Super. 2006). "[A] trial court may consider a wide array of relevant evidence…to determine the validity of a…plea agreement including, but not limited to, transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements." **Commonwealth v. Allen**, 557 Pa. 135, 147, 732 A.2d 582, 589 (1999).

Instantly, at Appellant's guilty plea hearing, the trial court conducted a

lengthy colloquy in which it reviewed, *inter alia*, the elements of each applicable offense. While reviewing the IDSI charge, the court stated:

> THE COURT: What that means is that between the years of 2003 and 2005 you engaged in sexual intercourse with a child…who was less than 16 years of age while you were more than four years older than she was, and that the two of you were not married to each other. Do you understand that?
>
> [APPELLANT]: Yes.

(N.T. Guilty Plea at 19). The court did not specify "deviate" sexual intercourse at that moment of the colloquy. Nevertheless, during the same proceedings, the Commonwealth recited the factual basis underlying the IDSI charge as follows: "[T]he alleged deviate sexual intercourse in this case is using a sex toy on the victim's vagina when she was 15 years of age, and also [Appellant], in addition to placing the toy there, he also placed his tongue on the victim's vagina when she was younger than 16 years old." *Id.* at 30. The following exchange then took place between the court and Appellant:

> THE COURT: Do you understand what [the Commonwealth] said?
>
> APPELLANT: Yes.
>
> THE COURT: You understand that those are the facts that support the charge?
>
> APPELLANT: Yes.
>
> THE COURT: You're admitting to that?
>
> APPELLANT: Yes.

- 15 -

*Id.* at 30-31. Additionally, the criminal complaint and information correctly set forth the elements of IDSI, and plea counsel testified at the PCRA hearing that he had reviewed the charges with Appellant before the guilty plea hearing. An examination of the totality of the circumstances surrounding the plea reveals Appellant understood the nature of the IDSI charge. Therefore, counsel was not ineffective for failing to inform Appellant of the elements of IDSI.[4] *See Pierce, supra*.

In issue four, Appellant argues he asked plea counsel to file a motion to withdraw the guilty plea immediately upon receipt of the OWL report. Appellant contends the trial court denied his motion to withdraw the plea, and this Court affirmed that decision, because counsel waited to file the motion until after the victim had testified at the June 25, 2010 sentencing hearing. Appellant maintains counsel could have avoided prejudice to the Commonwealth by filing the motion to withdraw earlier. Appellant further asserts counsel failed to present and preserve meritorious grounds for withdrawing the plea, other than Appellant's assertion of innocence and a change in defense strategy based on the victim's impact testimony.

_____

[4] To the extent Appellant directly challenges the validity of the guilty plea based on a defective plea colloquy, that issue is waived because Appellant failed to raise it in his motion to withdraw the guilty plea or on direct appeal. *See* 42 Pa.C.S.A. § 9544(b) (stating: "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding").

Appellant claims counsel should have argued Appellant's plea was involuntary in light of the OWL report and/or the trial court's misstatement of the elements of IDSI during the plea colloquy. Appellant concludes counsel's delay in filing a motion to withdraw the plea, and counsel's failure to argue meritorious grounds for withdrawal, constituted ineffective assistance. We disagree.

The following legal principles apply to a pre-sentence motion to withdraw a plea:

> At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct *sua sponte,* the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty. Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made [b]efore sentencing...should be liberally allowed. Thus, in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice. If the trial court finds "any fair and just reason," withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been "substantially prejudiced." As a general rule, the mere articulation of innocence [is] a "fair and just" reason for the pre-sentence withdrawal of a guilty plea unless the Commonwealth has demonstrated that it would be substantially prejudiced.

***Commonwealth v. Prendes***, 97 A.3d 337, 351–52 (Pa.Super. 2014), *appeal denied*, 629 Pa. 635, 105 A.3d 736 (2014) (internal citations omitted). ***See also Commonwealth v. Carrasquillo***, ___ Pa. ___, 115 A.3d 1284 (2015) (holding there is no *per se* rule regarding pre-sentence requests to withdraw pleas; court should consider plausibility, sincerity,

- 17 -

motivation, and timing of request; courts must also consider whether allowing withdrawal of plea will prejudice Commonwealth).

Instantly, at the initial sentencing hearing on June 25, 2010, the victim gave an oral victim impact statement. During cross-examination of the victim regarding her impact statement, plea counsel elicited testimony that he believed cast doubt on the victim's memory of when the sexual abuse started. Counsel requested a continuance and subsequently filed a motion to withdraw Appellant's guilty plea. The trial court denied the motion. On appeal, this Court affirmed the trial court's ruling on the ground that the Commonwealth would be substantially prejudiced by Appellant's withdrawal of his guilty plea at that late stage in the proceedings.[5]

With respect to Appellant's claim that counsel was ineffective for failing to seek withdrawal of the plea at an earlier time, the PCRA court reasoned:

> The "fair-and-just reason" cited by Appellant in his Motion was the change in the victim's statement that was revealed when she testified at Appellant's Sentencing Hearing. [Plea counsel] testified that as soon as he

_____

[5] This Court stated: "The averments represent an admission that [Appellant] believed he had obtained an advantage from Victim's oral impact statement that could be used against her and to the Commonwealth's detriment. [Appellant] obtained testimony otherwise unavailable to him, to the Commonwealth's prejudice. [Appellant] was intending to use the information to alter his trial strategy. Notwithstanding [Appellant's] subsequent assertion of innocence, [Appellant] was seeking to use information only available through the sentencing process to his benefit. This is a fundamentally unfair attempt to use the sentencing process to tip the scales in his favor. We believe this represents the essence of substantial prejudice to the Commonwealth." **Miley, supra** at *10.

noticed a possible issue with her testimony, he immediately halted the proceeding and discussed with Appellant and [his father] the potential of withdrawing Appellant's guilty plea. [Plea counsel] verified that this moment was the first time that the possibility of withdrawing the plea was discussed, and [Appellant's father] further corroborated that fact in his testimony. [Plea] counsel acted as soon as the potential fair and just reason surfaced, so it cannot be said that he was ineffective for failing to move for the withdrawal at an earlier time.

Additionally, the evidence revealed at Appellant's PCRA Hearing further points to the fact that Appellant did not ask [plea] counsel to withdraw his plea at an earlier date.... Despite Appellant's testimony that he requested his [plea] counsel to withdraw his plea at a prior point, his account is belied by both [plea counsel's] and [Appellant's father's] recollection that the Sentencing Hearing was the first instance where the subject of withdrawing Appellant's guilty plea was discussed. As such, [plea] counsel raised the motion before the [c]ourt at the earliest opportunity, and we therefore submit that the underlying claim is meritless. Additionally, [plea] counsel possessed a reasonable basis for raising the Motion at the given time.

(PCRA Court Opinion at 14-15). The record supports the court's reasoning.

Plea counsel could not have filed the motion to withdraw the guilty plea on the grounds asserted, at an earlier time. Further, the PCRA court was free to reject Appellant's testimony that he requested counsel to withdraw the plea for other reasons prior to the June 25, 2010 sentencing hearing. **See Knighten, supra**.

Additionally, Appellant's claim that counsel should have sought to withdraw Appellant's plea based on the OWL report, even absent a request from Appellant, is illogical given that counsel had explained the findings of

the OWL report to Appellant **before** Appellant decided to plead guilty. The trial court's single omission of the word "deviate" during the plea colloquy provided no basis for withdrawal either, where the totality of the circumstances showed Appellant understood the elements and factual basis of the IDSI charge. Therefore, counsel's timing on the motion to withdraw the guilty plea was reasonable and did not constitute ineffective assistance. ***See Kimball, supra***. Based on the foregoing, none of Appellant's challenges to counsel's effectiveness merit relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2016

- 20 -